IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RYAN PORTER and HAARIN KWON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NBTY, INC., UNITED STATES NUTRITION, INC., HEALTHWATCHERS (DE), INC., and MET-RX NUTRITION, INC., <br><br> Defendants. | Case No. 15-cv-11459 <br><br> Hon. Manish S. Shah <br><br> Hon. Young B. Kim |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO STRIKE CERTAIN EVIDENCE SUBMITTED BY PLAINTIFFS**

Philip L. Fraietta*
pfraietta@bursor.com
Frederick J. Klorczyk III*
fklorczyk@bursor.com
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, New York 10019
Phone: 646.837.7150
Fax: 212.989.9163
*Admitted *Pro Hac Vice*

Nick Suciu III
nicksuciu@bmslawyers.com
**BARBAT, MANSOUR & SUCIU PLLC**
1644 Bracken Road
Bloomfield Hills, Michigan 48302
Phone: 313.303.3472

Joseph J. Siprut
jsiprut@siprut.com
Michael M. Chang
mchang@siprut.com
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342

*Attorneys for Plaintiffs
and the Proposed Classes*

**TABLE OF CONTENTS**

**PAGE(S)**

I. DEFENDANTS AND THEIR EXPERT INCORRECTLY CALCULATED THE PDCAAS SCORE ............................................................................. 1

II. PARAGRAPH 17 AND EXHIBIT 36 OF THE FRAIETTA DECLARATION ARE ADMISSIBLE INTO EVIDENCE UNDER RULE 1006 ............................................................................................................................. 3

III. DEFENDANTS' EVIDENTIARY OBJECTIONS ARE WRONG .................................. 8

IV. IF THE COURT DEEMS IT NECESSARY, PLAINTIFFS RESPECTFULLY REQUEST LEAVE TO FILE A SUPPLEMENTAL EXPERT REPORT UNDER FED. R. CIV. P. 26(e) ........................................................ 10

CONCLUSION ............................................................................................................................ 12

## TABLE OF AUTHORITIES

**PAGE(S)**

Other Authorities

*Black & Decker Corp. v. Positec USA Inc.*,
    2015 WL 5612340 (N.D. Ill. Sept. 22, 2015) ................................................................. 11

*Depalma v. Scotts Co., LLC*,
    2019 WL 2417706 (D.N.J. June 10, 2019) ............................................................. 7, 8, 9

*Farmasino, Inc. v. Farmasino Pharm. (Jiangsu) Co., Ltd.*,
    2016 WL 7655740 (C.D. Cal. June 20, 2016) ............................................................ 7, 8

*Kleen Prod. LLC v. Int'l Paper*,
    306 F.R.D. 585 (N.D. Ill. 2015) ................................................................................... 11

*Porter v. NBTY, Inc.*,
    2016 WL 6948379 (N.D. Ill. Nov. 28, 2016) ........................................................ 1, 2, 5

*Talbert v. City of Chicago*,
    236 F.R.D. 415 (N.D. Ill. 2006) ................................................................................... 11

*Thomas v. Haslam*,
    303 F. Supp. 3d 585 (M.D. Tenn. 2018) .................................................................... 6, 9

*Uncommon, LLC v. Spigen, Inc.*,
    305 F. Supp. 3d 825 (N.D. Ill. 2018) ........................................................................... 11

9

Fed. R. Civ. P. 26(e)(1)(A) & (2) ....................................................................................... 10

FED. R. CIV. P. 26(e)10 ................................................................................................. i, 10

Fed. R. Evid. 1006 ...................................................................................................... passim

Federal Rule of Civil Procedure 56(c)(4) ............................................................................ 7

Federal Rule of Evidence 701(c) ......................................................................................... 7

12

21 C.F.R. § 101.9(c)(7)(ii) ........................................................................................... 1, 4, 5

Plaintiffs Ryan Porter and Haarin Kwon ("Plaintiffs") hereby respond to Defendants NBTY, Inc.'s, United States Nutrition, Inc.'s, Healthwatchers (DE), Inc.'s, and Met-Rx Nutrition, Inc.'s (collectively, "Defendants") Motion To Strike Certain Evidence Submitted By Plaintiffs In Support Of Motion For Class Certification And Plaintiffs' Motion To Strike And In Opposition To Defendants' Motion For Summary Judgment, Dkt. 197 ("MTS"). For the reasons stated herein, Defendants' motion to strike should be denied.

## I. DEFENDANTS AND THEIR EXPERT INCORRECTLY CALCULATED THE PDCAAS SCORE

From the inception of the case, Plaintiffs have argued that Defendants were required by 21 C.F.R. § 101.9(c)(7)(ii) to calculate the protein content of Body Fortress Super Advanced Whey Protein (the "Product") in accordance with the Protein Digestibility-Corrected Amino Acid Score ("PDCAAS") method, but failed to do so. *See* Second Amended Complaint, Dkt. 30 ("SAC") ¶¶ 24, 37-38. In ruling on Defendants' motion to dismiss the SAC, the Court agreed with Plaintiffs' interpretation of the regulation, and held that "for a product like Body Fortress Super Advanced Whey Protein, protein content … *must* be stated as a percentage of the Daily Reference Value using the corrected amount of protein [PDCAAS method]." *Porter v. NBTY, Inc.*, 2016 WL 6948379, at *5 (N.D. Ill. Nov. 28, 2016) (citing 21 C.F.R. § 101.9(c)(7)(ii)).

In discovery, Defendants admitted that they <u>never</u> utilized the PDCAAS method for Formulations 1-4 of the Product, which are the formulations at issue here. Defendants' Rule 30(b)(6) designee, Jessica Rendall, testified:

> Q: Did NBTY use that PDCAAS method to calculate the protein content of the Body Fortress whey protein products that used formulas 1, 2, 3, or 4?
>
> A: No.

1

Ex. 4A, Rendall Dep. at 182:10-14; *see also* PSOF ¶ 6.[1] Defendants also stipulated that "PDCAAS for [Body Fortress Super Advanced Whey Protein] can be determined mathematically." PSOF ¶ 26 (quoting Ex. 37 (Stipulation Re: Protein Testing)).

In their motion for summary judgment, Defendants argued that "Plaintiffs have not raised a genuine issue of fact that the digestibility factor for the Product is less than 1.0, such that any 'correction' is in fact required under the PDCAAS method." Memorandum Of Law In Support Of Defendants' Motion For Summary Judgment, Dkt. 158 ("MSJ") at 12. Defendants' purported subject-matter expert, Dr. Guoyao Wu, also opined that "the PDCAAS value for the Body Fortress Super Advanced Whey Product was 1.00." Defs.' Ex. DDD, Expert Report of Dr. Guoyao Wu, Dkt. 171-3 ("Wu Report") at 24. However, Defendants and their expert incorrectly calculated the PDCAAS score. As set forth in Plaintiffs' summary judgment opposition and affirmative *Daubert* motion, Defendants failed to calculate the amino acid ratio, which is half of the PDCAAS equation. *See* PSOF ¶¶ 26-35; Plaintiffs' Memorandum Of Law In Opposition To Defendants' Motion For Summary Judgment, Dkt. 175 ("MSJ Opp.") at Argument § II.C.2; Plaintiffs' Motion To Exclude The Expert Testimony Of Dr. Guoyao Wu, Dr. Dominique M. Hanssens, Dr. Alan D. Castel, And Dr. Daniel M. Garrett, Dkt. 179 ("Plfs.' *Daubert* Mot.") §§ I.B-D. By failing to calculate the amino acid ratio, Defendants were unable to correctly calculate the PDCAAS score. *Id.*

In addition to explaining why Defendants and Dr. Wu incorrectly calculated the PDCAAS score, Plaintiffs took the additional step of performing the basic arithmetic required to make that calculation. *Id.* They then summarized that arithmetic in Exhibit 36. *See* Ex. 36.

---

[1] All numeric "Ex." citations in this brief are to the June 28, 2019 Omnibus Declaration of Philip L. Fraietta (Dkt. 180) and the April 5, 2019 Declaration of Philip L. Fraietta (Dkt. 141), unless otherwise noted. All "PSOF" citations in this brief are to Plaintiffs' Statement of Additional Material Facts That Present A Genuine Issue For Trial (Dkt. 176).

Defendants do not argue that Plaintiffs applied the wrong mathematical formulas to calculate the PDCAAS score, nor could they. The formulas that Plaintiffs applied are derived from federal law, and even Dr. Wu has used them in his academic work, including in his textbook *Principles of Animal Nutrition*.[2] *See* PSOF ¶¶ 26-35. Defendants also do not take issue with Plaintiffs' counsel's arithmetic. Rather, Defendants argue that Exhibit 36 – a chart summarizing other admissible documents and performing basic arithmetic – is inadmissible. Defendants' evidentiary gamesmanship should be rejected.

## II. PARAGRAPH 17 AND EXHIBIT 36 OF THE FRAIETTA DECLARATION ARE ADMISSIBLE INTO EVIDENCE UNDER RULE 1006

Defendants argue that "Paragraph 17 of the Fraietta Declaration and Plaintiffs' 'PDCAAS Calculations' [Exhibit 36] are inadmissible on multiple bases." MTS at 3. That is wrong. Defendants ignore Fed. R. Evid. 1006, which provides that "[t]he proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Exhibit 36 is precisely that – a summary chart offered to prove the content of voluminous writings. 8/6/19 Supplemental Declaration of Philip L. Fraietta ("8/6/19 Fraietta Decl.") ¶ 3.

The first column of Exhibit 36 lists the nine essential amino acids that are contained in the Product, according to the Product labels (Exs. 18-21) or the Genesis Reports (Exs. 14-15), all of which were produced by Defendants and are admissible. 8/6/19 Fraietta Decl. ¶ 5.

The second column of Exhibit 36 performs a basic mathematical calculation that is required to calculate the PDCAAS score. *Id.* ¶ 6. "[T]he PDCAAS score is calculated by

---

[2] Dr. Wu also relies on his textbook *Principles of Animal Nutrition* as support for his opinions in this matter. *See* Wu Report at 31. However, as explained in Plaintiffs' affirmative *Daubert*, this contradiction renders Dr. Wu's opinions inadmissible. Plfs.' *Daubert* Mot. § I.A. Indeed, in the event the Court agrees that Dr. Wu's testimony is inadmissible, Defendants will have no evidence concerning PDCAAS capable of rebutting Plaintiffs' *prima facie* showings, thereby mooting this issue in its entirety.

multiplying the lowest amino acid ratio x true protein digestibility." Ex. 140 at 8.1(e). In other words:

$$PDCAAS\ Score = [Lowest\ Amino\ Acid\ Ratio] \times [True\ Protein\ Digestibility]$$

In order to calculate the lowest amino acid ratio, the Report of the Joint FAO/WHO (which 21 C.F.R. § 101.9(c)(7)(ii) instructs to use) provides the following formula: "(mg of essential amino acid in 1.0 g of test protein/ mg of the same amino acid in 1.0 g of reference pattern for 9 essential amino acids plus tyrosine and cystine should be calculated by using the 1985 FAO/WHO/UNU (4) suggested pattern of amino acid requirements for preschool children (2-5 years))." Ex. 140 at 8.1(c). In other words:

$$Amino\ Acid\ Ratio = \frac{[mg\ of\ essential\ amino\ acid\ in\ 1.0g\ of\ test\ protein]}{[mg\ of\ the\ same\ amino\ acid\ as\ stated\ in\ the\ reference\ table]}$$

Thus, in order to calculate the amino acid ratio, one must first calculate the "mg of essential amino acid in 1.0g of test protein." The second column of Exhibit 36 does precisely that. It divides the milligrams of each essential amino acid, as stated on the Product labels or the Genesis Reports, by the grams of protein purportedly in the Product. 8/6/19 Fraietta Decl. ¶ 6. Again, every number in the second column of Exhibit 36 is derived from documents which were produced by Defendants and are admissible.

The third column of Exhibit 36 lists the "mg of the same amino acid as stated in the reference table." *Id.* ¶ 7. The "reference table" is shown in Table 7 of the Report of Joint FAO/WHO Expert Consultation regarding Protein Quality Evaluation and is set forth in Section 8.1(c) of Exhibit 140. Ex. 140 at 8.1(c), Table 7.[3] In other words, the third column of Exhibit 36

---

[3] Federal regulations applicable to Defendants incorporate by reference the methods calculating protein content set forth in the Joint Report of the FAO/WHO. *See* 21 C.F.R. § 101.9(c)(7)(ii) ("The protein digestibility-corrected amino acid score shall be determined by methods given in sections 5.4.1, 7.2.1, and 8.00 in "Report of the Joint FAO/WHO Expert Consultation on Protein Quality Evaluation."").

simply transposes the numbers listed in Table 7 of Exhibit 140 into the summary chart that is Exhibit 36. 8/6/19 Fraietta Decl. ¶ 7.

The fourth column of Exhibit 36 calculates the amino acid ratios of each of the nine essential amino acids in the Product using the basic mathematical formula stated on the prior page. *Id.* ¶ 8. In other words, the fourth column of Exhibit 36 divides the number in column 2 by the number in column 3. *Id.*

The fifth column of Exhibit 36 calculates the PDCAAS score using the basic mathematical formula stated on the prior page. *Id.* ¶ 9. In other words, the fifth column of Exhibit 36 multiplies the lowest amino acid ratio (listed in green in column 4) by 1 (the true protein digestibly as argued by Defendants). *Id.*

The sixth column of Exhibit 36 calculates the daily value percentage ("DV%"). *Id.* ¶ 10. Pursuant to 21 C.F.R. § 101.9(c)(7)(ii), the DV% is calculated using the following formula:

$$\% \ DV = \frac{[Number \ of \ grams \ of \ protein] \times [PDCAAS \ Score]}{[Reference \ value \ of \ 50g]}$$

In other words, sixth column of Exhibit 36 multiplies the number of grams of protein in the Product, as stated on the Product labels or Genesis Reports, by the PDCAAS score, as calculated in column 5, and then divides that number by 50 (the reference value). *Id.*

To summarize, every number listed in Exhibit 36 is derived from the Product labels (Exs. 18-21), the Genesis Reports (Exs. 14-15), and the Report of the Joint FAO/WHO Expert Consultation (Ex. 140). *Id.* ¶ 11. Plaintiffs' counsel then performed fourth-grade level arithmetic using those numbers. *Id.* Rather than present the Court with a calculator and hundreds of numbers derived from voluminous exhibits, Plaintiffs' counsel created Exhibit 36 to summarize those numbers and calculations in a manner that can be conveniently analyzed and verified. That is precisely why Rule 1006 exists.

5

| Column of Exhibit 36 | What Column of Exhibit 36 Represents |
|---|---|
| Column 1 | Essential amino acids found in the Product as stated on the Product labels (Exs. 18-21) or Genesis Reports (Exs. 14-15) |
| Column 2 | Amount of essential amino acids in the Product, as stated on the Product labels or Genesis Reports, divided by the purported grams of protein found in the formulation, as stated on the Product Labels or Genesis Reports |
| Column 3 | Transposing of numbers found in Table 7 of Exhibit 140 at 8.1(c), on page 23 |
| Column 4 | Calculation of the amino acid ratios for the nine essential amino acids, calculated by dividing the number in Column 2 by the number in Column 3 |
| Column 5 | PDCAAS score, calculated by multiplying the lowest amino acid ratio in column 4 by 1.0 |
| Column 6 | DV%, calculated by multiplying the PDCAAS score in Column 5 by the purported grams of protein found in the formulation, and then dividing by 50 |

Courts across the country have held that similar summary charts are admissible under Rule 1006. For example, in *Thomas v. Haslam*, 303 F. Supp. 3d 585 (M.D. Tenn. 2018), the plaintiffs chose not to "rely solely on the data in its raw form, but also on their compilation and tabulation of figures from that data to represent the percentages of residents in a number of Tennessee metropolitan areas who drive to work." *Id.* at 625. As the court stated, "[g]iven the voluminous nature of the census data, it seems to the court that a Rule 1006 summary would be appropriate." *Id.* at 625-26. The court went on to state that its "consideration of this matter would therefore be aided by [the defendant] setting aside his evidentiary gamesmanship and weighing in on whether the plaintiffs' summary is accurate. In other words, the court invites [the defendant] to check the plaintiffs' math rather than looking for ways to avoid it." *Id.* at 626

6

(emphasis added). The same holds true here. Defendants are more than capable of ensuring that Plaintiffs transposed the numbers from the Product labels (Exs. 18-21), the Genesis Reports (Exs. 14-15), and the Report of the Joint FAO/WHO Expert Consultation (Ex. 140) onto Exhibit 36 correctly. Defendants are also more than capable of performing the fourth-grade level arithmetic necessary to verify that Plaintiffs' math is correct. They failed to do so.

As another example, in *Depalma v. Scotts Co., LLC*, 2019 WL 2417706 (D.N.J. June 10, 2019), the defendant "argue[d] that Plaintiffs' reliance on their counsel's declaration and summary chart is contrary to Federal Rule of Civil Procedure 56(c)(4) … and Federal Rule of Evidence 701(c)." *Id.* at *6. "Plaintiffs respond[ed] that the summary chart is allowed under Fed. R. Evid. 1006 because it summarizes the information contained in the voluminous but independently admissible Exhibits 14 and 15." *Id.* The *Depalma* court agreed with the plaintiffs, noting that "[t]he proponent, counsel for plaintiffs, has gained personal familiarity with the underlying data furnished by Scotts; the underlying data is admissible in evidence; and the calculations, which involve little more than arithmetic, are within the ken of a lay person." *Id.* at *7. "As required by Fed. R. Evid. 1006, the underlying data are available to – indeed, were produced by the defendant. As contemplated by the Rule, the defendant may of course challenge any perceived inaccuracies." *Id.* "<u>This is Scotts' own information. Exhibits 14 and 15 are before the Court, and a defendant cannot defeat summary judgment by stating that its own documents are too voluminous or complex for the court to consider.</u>" *Id.* at *8 (emphasis added).

As a final example, in *Farmasino, Inc. v. Farmasino Pharm. (Jiangsu) Co., Ltd.*, 2016 WL 7655740 (C.D. Cal. June 20, 2016), the plaintiff objected to the admissibility of a summary chart. *Id.* at *6. The court overruled that objection and found the challenged summary chart admissible "[b]ecause defendants … established that the invoices are admissible and because the

7

introduction of hundreds of pages of purchase orders, invoice, and other documents would unduly complicate matters for the Court and any prospective jury[.]" *Id.* The court also overruled plaintiffs' objection that "Gu's summarizations are inadmissible because the declaration lacks foundation for the declarant's expertise in tabulating figures, and because the declarant has not been designated as an expert witness." *Id.* As the court held, "the 'tabulation' to which plaintiff takes issue is a matter of simple arithmetic, adding the sales amount found on each of the respective sales sheets. This kind of calculation is not the kind of 'scientific, technical, or other specialized knowledge' that requires an expert witness." *Id.*

**III.     DEFENDANTS' EVIDENTIARY OBJECTIONS ARE WRONG**

Because Exhibit 36 is admissible under Rule 1006, Defendants' various evidentiary objections are wrong. *See* MTS at 3-5.

First, Defendants argue that Exhibit 36 has "not been authenticated" pursuant to Rule 901. But as stated above, every number in Exhibit 36 is derived from admissible documents. Defendants do not dispute that the Product labels (Exs. 18-21), the Genesis Reports (Exs. 14-15), or the Report of the Joint FAO/WHO Expert Consultation (Ex. 140) have been properly authenticated. Thus, Defendants' authenticity objection is meritless.

Second, Defendants argue that Exhibit 36 is inadmissible because "the declaration provides no information as to how the declarant learned that the document contained PDCAAS calculations, how the document was created, or who created the document." MTS at 3. But again, Exhibit 36 is comprised of numbers that are derived from documents produced in discovery, which have been central to the case. Thus, it is readily apparent that Plaintiffs' counsel has knowledge of these documents. *Depalma*, 2019 WL 2417706 at *7 ("The proponent, counsel for plaintiffs, has gained personal familiarity with the underlying data

8

furnished by Scotts."). Moreover, Exhibit 36 performs basic mathematical calculations that a fourth-grader could do. *Id.* ("[T[he calculations, which involve little more than arithmetic, are within the ken of a lay person."). And finally, the 8/6/19 Fraietta Declaration provides the information Defendants complain is lacking. 8/6/19 Fraietta Decl. ¶¶ 3-11.

Third, Defendants argue that "this evidence contains inadmissible opinion testimony by a lay witness." MTS at 4. Nonsense. Transposing numbers from one document to another and performing basic arithmetic is not "opinion." It is "within the ken of a lay person." *Depalma*, 2019 WL 2417706 at *7. The Court and the jury do not need an expert to "opine" as to whether 11.31 divided by 19 equals 0.5953. Ex. 36 at 1. Anybody with a calculator can verify that calculation is correct.

Fourth, Defendants argue that "to the extent Plaintiffs wished to introduce PDCAAS calculations for the Product into evidence, they were obligated to disclose those calculations *during discovery* … and this evidence is properly stricken." MTS at 4. That is wrong. As stated above, *during discovery*, the Parties stipulated that "PDCAAS for [Body Fortress Super Advanced Whey Protein] can be determined mathematically." PSOF ¶ 26 (quoting Ex. 37 (Stipulation Re: Protein Testing). And the numbers needed to perform those mathematical calculations are all derived from documents already produced in discovery – almost entirely by Defendants. *See* Exs. 18-21 (Product labels), Exs. 14-15 (Genesis Reports), Ex. 140 (Report of the Joint FAO/WHO Expert Consultation). Defendants could have performed the basic mathematical calculations required at any time. Indeed, they attempted to do so in their motion for summary judgment. They just did so incorrectly. Defendants should not be permitted to avoid the consequences of their error by engaging in evidentiary gamesmanship. *Thomas*, 303 F. Supp. 3d at 626 ("[C]onsideration of this matter would therefore be aided by [Defendants]

setting aside [their] evidentiary gamesmanship and weighing in on whether the plaintiffs' summary is accurate. In other words, the court invites [Defendants] to check the plaintiffs' math rather than looking for ways to avoid it.").

The absurdity of Defendants' argument is all the more apparent when considering that their own expert, Dr. Wu, attempted to perform PDCAAS calculations in a manner contrary to federal law as interpreted in his own textbook. *See* PSOF ¶¶ 31-35. In opposing Defendants' summary judgment motion, Plaintiffs' counsel read those federal regulations and Dr. Wu's textbook, and explained why Dr. Wu's methodology was incorrect. Defendants have no response to this. Defendants only objection is that Plaintiffs' counsel took the additional step to do the basic arithmetic. We are simply at a loss as to how Defendants have been prejudiced by arithmetic, and it would be a miscarriage of justice to not permit Plaintiffs to put forth evidence to correct these objectively verifiable errors of basic arithmetic.

### IV.  IF THE COURT DEEMS IT NECESSARY, PLAINTIFFS RESPECTFULLY REQUEST LEAVE TO FILE A SUPPLEMENTAL EXPERT REPORT UNDER FED. R. CIV. P. 26(e)

Although it is Plaintiffs' position that expert testimony is not needed to perform the basic arithmetic required to calculate the PDCAAS score, should the Court disagree, Plaintiffs respectfully request leave to file a supplemental expert report of Dr. William Campbell under Fed. R. Civ. P. 26(e), for the limited purpose of performing the PDCAAS calculations. Pursuant to Rule 26(e), an expert witness must "supplement or correct" his expert report if he "learns that in some material respect the disclosure or response is incomplete." Fed. R. Civ. P. 26(e)(1)(A) & (2).

> By mandating supplementation, Rule 26(e) seeks to prevent surprise at trial. Allowing, as a discretionary manner, the filing of a supplemental report that fully informs the recipient of the anticipated testimony of the expert accomplishes that very purpose. So long as the decision does not entail some greater harm to the

10

> opponent of the report, sound discretion would seem to counsel allowing the supplemental report to be filed.

*Talbert v. City of Chicago*, 236 F.R.D. 415, 450 (N.D. Ill. 2006). *See also Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 843-44 (N.D. Ill. 2018) (denying motion to strike supplemental expert report on basis that it sufficiently adhered to scope of initial expert report and noting that "[s]upplementary reports cannot offer ''entirely new expert opinions'; rather, they should clarify or expand upon information in the expert's original report or 'information given during the expert's deposition.' … The supplementary report may be intended in part to rebut an opposing party's expert.") (internal quotation marks and citations omitted); *Black & Decker Corp. v. Positec USA Inc.*, 2015 WL 5612340, at *14 (N.D. Ill. Sept. 22, 2015) (denying motion to strike expert report made two months before trial where expert's "supplemental report corrects his earlier omissions, but does not change Defendants' theory of the case or introduce new opinions"); *cf. Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585, 592 (N.D. Ill. 2015), *aff'd sub nom. Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016) (denying motion to strike supplemental expert report because expert "will be held to the original methodology and opinions in his initial report, but that does not mean he cannot respond to Defendants' experts' criticisms in defending his initial conclusions.").

      Here, Dr. Campbell's Expert Report already opines on PDCAAS. *See* Expert Report of Dr. William Campbell, Dkt. 147 ("Campbell Report") at 7-8. Permitting Dr. Campbell to supplement those opinions with arithmetic that a fourth-grader could verify does not prejudice Defendants. *See, e.g.*, *Kleen Prod.*, 306 F.R.D. at 592 ("[H]ere Dr. Dwyer's reply report is based on the same data in his original report and does not seek to include new data. Instead of abandoning his prior methods in favor of the new ones, Dr. Dwyer's reply concludes that the new calculations support his initial methodology and opinions.").

11

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendants' Motion to Strike in its entirety.

Dated: August 6, 2019

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Philip L. Fraietta*
        Philip L. Fraietta

Philip L. Fraietta*
*pfraietta@bursor.com*
Frederick J. Klorczyk III*
*fklorczyk@bursor.com*
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, New York 10019
Phone: 646.837.7150
Fax: 212.989.9163
*Admitted *Pro Hac Vice*

Nick Suciu III
*nicksuciu@bmslawyers.com*
**BARBAT, MANSOUR & SUCIU PLLC**
1644 Bracken Road
Bloomfield Hills, Michigan 48302
Phone: 313.303.3472

Joseph J. Siprut
*jsiprut@siprut.com*
Michael M. Chang
*mchang@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342

*Attorneys for Plaintiffs
and the Proposed Classes*

12

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiffs' Memorandum of Law In Opposition to Defendants' Motion to Strike Certain Evidence Submitted By Plaintiffs** was served this 6th day of August, 2019, on all counsel of record electronically via the Court's ECF filing system.

*/s/ Philip L. Fraietta*
Philip L. Fraietta