UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RYAN PORTER and HAARIN KWON, <br><br> Plaintiffs, <br><br> v. <br><br> NBTY, INC., UNITED STATES NUTRITION, INC., HEALTHWATCHERS (DE), INC., and MET-RX NUTRITION, INC., <br><br> Defendants. | No. 15 CV 11459 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Ryan Porter and Haarin Kwon bought a protein supplement product that they allege had a misleading label. They bring state-law consumer-fraud claims against the manufacturer and its subsidiaries. I denied defendants' motion to dismiss the consumer-fraud claims, and defendants now move for summary judgment, primarily based on new case law and in part based on facts learned during discovery.

I.  Legal Standard

Defendants NBTY, Inc., along with its subsidiaries, defendants United States Nutrition, Inc., Healthwatchers (DE), Inc., and Met-RX Nutrition, Inc., must show there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute over a material fact exists when, based on the evidence, a reasonable jury could return a verdict for plaintiffs Porter and Kwon. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). I construe

the facts and draw all reasonable inferences in the light most favorable to plaintiffs. *Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 879 F.3d 760, 766 (7th Cir. 2018). Defendants bear the burden of establishing the absence of any genuine issue of material fact, while Porter and Kwon must present evidence to establish every element of their claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## II. Background

Between 2013 and 2016, Porter and Kwon purchased defendants' protein supplement Body Fortress Super Advanced Whey Protein because they believed the product contained 60 grams of whey protein in two scoops. [30] ¶¶ 7–8; [176] ¶¶ 1,10.[1] The front label stated "60g Premium Protein." [30] ¶ 50. The nutrition panel on the back stated the product contained 30 grams of protein and 60% of the "Daily Value" for protein, per scoop. [30] ¶ 44. Plaintiffs claim defendants engaged in "protein-spiking," a practice that inflates a product's protein count. [30] ¶ 17. Because defendants allegedly overstated the protein amount and source on the product label, Porter and Kwon claim the product label is false and misleading in violation of multiple state consumer-fraud laws. [30].

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are from the CM/ECF header placed at the top of documents. When possible, facts are taken from plaintiffs' response to defendants' statements of material facts, where both the original facts and the responses are in one document. [176]. Material facts set forth in the Local Rule 56.1 statements are deemed admitted unless properly controverted. N.D. Ill. Local R. 56.1. Defendants did not reply to plaintiffs' statement of additional material facts, which are therefore admitted. To the extent this opinion refers to matters filed under seal, the seal is lifted. Once filed with the court, documents that affect the disposition of federal litigation are presumptively open to public view unless a statute, rule, or privilege justifies confidentiality. *City of Greenville, Ill. v. Syngenta Crop Prot., LLC*, 764 F.3d 695, 697 (7th Cir. 2014) (citation and quotation omitted).

Defendants filed a motion to dismiss, [37], and I dismissed some of plaintiffs' claims. [49]; *Porter v. NBTY, Inc.*, No. 15 CV 11459, 2016 WL 6948379, at *8 (N.D. Ill. Nov. 28, 2016). However, in relevant part, I held that plaintiffs' state-law claims were not preempted by the Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 343 *et seq.* (FDCA), as amended by the National Labeling and Education Act, 21 U.S.C. §§ 341 *et seq.*[2]—with the exception of the total grams of protein per serving size stated on the nutrition panel because FDA regulations permit defendants' use of the "nitrogen method" to calculate that figure.[3] [49] at 4; 21 C.F.R. § 101.9(c)(7) (2019). This method measures protein content indirectly, by testing for the nitrogen content and multiplying that measurement by a factor of 6.25. § 101.9(c)(7). "Protein-spiking" (also called "nitrogen-spiking" or "amino-spiking") occurs when manufacturers exploit the nitrogen method by increasing the amount of nitrogen in a product to inflate the protein count. [49] at 4; [30] ¶ 17.

When information on a nutrition panel, like the total grams of protein, appears elsewhere on the product, it becomes a nutrient-content claim subject to further

---

[2] In food labeling cases, federal preemption occurs when "the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food [that] … [a]re not imposed by or contained in the applicable [federal statutory] provision (including any implementing regulation) … or [d]iffer from those specifically imposed by or contained in the applicable [federal statutory provison or regulation]." 21 C.F.R. § 100.1(c)(4).

[3] *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982)("Federal regulations have no less preemptive effect than federal statutes"); *see also Turek v. Gen. Mills, Inc.,* 662 F.3d 423 (7th Cir. 2011).

3

requirements.[4] § 101.13(c). For protein-content claims, the regulations require a "statement of the corrected amount of protein per serving" expressed as a percentage of daily value on the nutrition panel. § 101.9(c)(7)(i). This figure must be calculated using "the actual amount of protein (gram) per serving multiplied by the amino acid score corrected for protein digestibility." § 101.9(c)(7)(ii).[5] Because defendants made a protein-content claim outside the nutrition panel and were therefore required to calculate the actual amount of protein per serving, I held that plaintiffs alleged enough facts to suggest that the front label describing the amount of protein in the product was false or misleading under the FDCA and its implementing regulations. [49] at 13.

I also found that the food-labeling requirements cover statements about the total protein in a product but do not impose any requirements when labeling proteins by type. *Id.* at 13–14. Therefore, any protein-content claim NBTY made about a specific type of protein, like whey, may also be false or misleading under § 101.13(i)(3). *Id.* Finally, I concluded that the name "Body Fortress Super Advanced Whey Protein" may also violate § 101.18(b) because the plaintiffs adequately alleged that the product name misleads consumers by suggesting the product is comprised exclusively of pure whey protein, as opposed to a mix of ingredients, like nitrogen. *Id.*

---

[4] A nutrient-content claim "expressly or implicitly characterizes the level of a nutrient." 21 C.F.R. § 101.13(b). For example, "contains 100 calories" is an express nutrient content claim. § 101.13(b)(i).

[5] The "corrected" amount cannot be calculated using the nitrogen method. But the total grams of protein on the nutrition panel can be, § 101.9(c)(7), meaning the regulations permit the use of two different methods to calculate protein, potentially resulting in inconsistent—yet permissible—results on the nutrition panel.

4

at 14–15. Because plaintiffs' state-law claims were based on conduct that violates federal law, I concluded their claims were not preempted. [49]. In other words, the state consumer-fraud laws imposed requirements "identical to" the FDCA and its implementing regulations—namely, to not use false or misleading food labels—and did not directly or indirectly impose additional or different requirements concerning the composition or labeling of food. § 100.1(c)(4).

After the ruling, the parties engaged in discovery, which gave defendants an opportunity to question Porter and Kwon about their decision to purchase Body Fortress Super Advanced Whey Protein. [176] ¶ 10. In 2018, the Ninth and Eleventh Circuits issued decisions that address federal preemption in the context of food labeling claims. Defendants then filed this motion for summary judgment, asking me to revisit my earlier preemption ruling, dismiss plaintiffs' allegations for failure to state a claim—both as a matter of law and fact—and resolve certain matters related to plaintiffs' proposed class action. [157].

### III. Analysis

#### A. Preemption and Safe Harbor Provisions

"The law of the case is a discretionary doctrine, not an inflexible dictate." *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 818 (7th Cir. 2018) (collecting cases). While not controlling law, new appellate decisions from other circuits may be persuasive or instructive and merit revisiting an earlier ruling. *See Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 854 (7th Cir. 2004).

*Durnford v. MusclePharm Corp.*, 907 F.3d 595 (9th Cir. 2018), is distinguishable from this case.[6] According to the court, "[Tucker] Durnford was misled by the 40-gram figure on the Supplement's nutrition panel." *Id.* at 599. Footnote one distinguishes between the product's packaging as a whole, the "label," and the "nutrition panel," and notes "the latter is subject to a unique set of stringent federal regulations." *Id.* at 598, n.1. The 40-grams figure was calculated using the permissible nitrogen method, so the court affirmed the district court's ruling that Durnford's state-law misbranding claim was preempted because it would impose different measurement requirements from the federal ones governing the total amount of protein on nutrition panels. *Id.* at 601–02.

Unlike Durnford, Porter and Kwon do not claim they were misled by the total protein amount on the nutrition panel. Instead, they argue the protein amount listed on the front label—which, unlike nutrition-panel statements, is subject to the general principles of nutrient-content claims under § 101.13—is false or misleading. *Durnford* also supports plaintiffs' protein-source theory. The court of appeals reversed the district court and held Durnford successfully alleged that the product label misled him to believe the protein derived from only two pure protein sources, instead of a mix of ingredients, including nitrogen-spiking agents. 907 F.3d at 603–04. The court concluded this state-law claim was not preempted because the alleged

---

[6] I focus on the court's opinion and how the court interpreted Durnford's complaint. I do not evaluate the complaint itself, because the court's analysis is what matters here.

conduct violated federal law. *Id.*; *see* 21 U.S.C. § 343(a). *Durnford* does not persuade me to change my mind about the viability of plaintiffs' theories.

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186 (11th Cir. 2018), is not persuasive either. Hi-Tech alleged that protein quantity and source statements on the nutrition panel and front label were misleading. *Id.* at 1192. The court believed that if the statements were misleading, the defendant's only remedies were to reduce the advertised amount of protein per serving or itemize the proteins by type and amount. *Id.* at 1195. Because no federal statute or regulation required that, the state-law claims were not identical to federal law or FDA regulations and thus preempted. *Id.* at 1195–96.

But if a statement, anywhere on a food label, is misleading, the FDCA and its implementing regulations expressly prohibit it. *See e.g.* 21 U.S.C. § 343(a); 21 C.F.R. §§ 101.9(4), 101.13(i)(3), 101.18(a). An admittedly misleading statement[7] is always unlawful, regardless of the remedies. Furthermore, the remedies represent two of many advertising solutions, not new or different requirements concerning the composition or labeling of food. The FDCA and its implementing regulations do not specify every way protein content or source can be calculated or advertised outside the nutrition panel. Instead, there is a uniform federal requirement prohibiting false or misleading food labels, with statements in the nutrition panel subject to further requirements. Porter and Kwon's state-law consumer-fraud claims thus track federal

---

[7] Such statements would automatically exclude nutrition-panel statements that follow federal requirements, which by definition cannot be false or misleading. 21 C.F.R. §§ 101.9, 101.13(c).

7

law. Finally, *Hi-Tech* is distinguishable with respect to Porter and Kwon's § 101.18 claim. The court held Hi-Tech's source claim was invalid because the product name, HexaPro, did not include any ingredients, and therefore could not mislead a consumer about protein composition. 910 F.3d at 1195–96. Here, the product name, "Body Fortress Super Advanced Whey Protein," includes an ingredient, which may have misled plaintiffs into believing that the only type of protein in the product was whey.

That a protein-content calculation might be misleading when on the front label but permitted in the nutrition panel does not mean plaintiffs' theory fails as a matter of law. The regulations already allow for certain inconsistencies in statements of protein content. Section 101.9(c)(7) permits use of the nitrogen method to calculate the protein content on the nutrition panel—the number of grams of protein in a serving—but requires an additional, different calculation, expressed as a percentage of daily value, when a protein claim is made. These two figures, which must be placed next to one another on the nutrition panel, § 101.9(c)(7)(i), may seem inconsistent (although it makes sense that the percentage of daily value include only true protein, not nitrogen-spiked values, so the consumer can make a better informed decision about the nutritional value of the product). Second, a protein claim cannot be false or misleading under § 101.13(i)(3). If the nitrogen method is exploited to inflate protein content, then the amount of protein listed on the front label may be false or misleading, even when that same number listing the total grams of protein on the nutrition panel is technically permitted by law. Porter and Kwon's protein quantity and source claims are not preempted in light of the new appellate court decisions.

Because the challenged conduct is not permitted by applicable laws and regulations, the safe harbor provisions under Illinois and New York law do not apply. 815 ILCS 505/10b(1); N.Y. Gen. Bus. Law §§ 349(d); 350–d; *see also Marcus v. AT & T Corp.*, 938 F. Supp. 1158, 1173 (S.D.N.Y. 1996), *aff'd sub nom. Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998). As noted previously, plaintiffs do not take issue with defendants' use of the nitrogen method to calculate the total protein content listed on the nutrition panel. [49] at 4.

## B. Proximate Cause: Percentage of Daily Value

Under the Illinois Consumer Fraud Act, "a valid claim must show that the consumer fraud proximately caused plaintiff's injury." *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 501 (1996) (internal citation omitted) (cited by *Squires-Cannon v. Forest Pres. Dist. of Cook Cty.*, 897 F.3d 797, 805 (7th Cir. 2018)). Similarly, under New York state law, plaintiffs must allege they suffered an injury "as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) (listing elements of claims brought under sections 349 and 350 of New York General Business Law) (internal quotation marks omitted) (cited by *Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*, 753 F. App'x 87, 89 (2d Cir. 2019)).

According to defendants, Porter testified that he did not look at the "percent daily value columns" on the nutrition panel and that he "never focus[ed] on that" information. [176] ¶ 10. Porter also testified that the front label claim was the only "misleading aspect of the label." *Id.* Kwon testified that he did not "look at the percent daily value of the different components." *Id.* Plaintiffs dispute, but do not deny, these

9

facts because both Porter and Kwon testified generally that the packaging label affected their purchasing decision. *Id.* Both parties cite to the depositions of Porter and Kwon, which provide the necessary context to confirm that defendants' facts are not in dispute. While Porter initially responded that "the label" led him to believe the product contained 100% whey protein, he immediately clarified that it was the "front of the label." [142-1] at 10. Porter later confirmed he was not misled by any other labeling. *Id.* at 13. Kwon similarly confirmed that he based his purchasing decision on the "center part of the label" and that he only recalled the "60 grams of whey protein" label affecting his decision to purchase the product. *Id.* at 24–25, 41. Defendants' facts are not controverted. No reasonable jury could infer the percentage of daily value listed on the nutrition panel caused either Porter or Kwon to purchase defendants' product. Because plaintiffs cannot prove causation, defendants are entitled to judgment as a matter of law on plaintiffs' claim that the percentage of daily value calculation on the nutrition panel misled them.[8]

As plaintiffs indicate in their objection, [176] ¶ 10, the percentage of daily value calculation is likely relevant to plaintiffs' claim about the front label. However, because that claim is not at issue on summary judgment (aside from the preemption argument), I need not rule on defendants' motion to strike, [197], or the admissibility of plaintiffs' consumer survey at this juncture.

---

[8] Because plaintiffs cannot prove the causation element, I do not reach the question of whether the percentage of daily value figure was misleading or material.

### C. Class Action Claims

In its motion for summary judgment, defendants request rulings related to plaintiffs' class action. But no class has been certified yet. The scope of any certified class affects absent class members and their claims, but not Porter and Kwon's individual claims. As individual plaintiffs, Porter and Kwon have asserted and not abandoned the protein-source theory in their second amended complaint. [30] at 14–18. Likewise, arguments about the availability of statutory damages in class actions under New York state law will be addressed when I rule on the pending motion to certify a class.

## IV. Conclusion

Defendants' motion for summary judgment, [157], is granted as to plaintiffs' claim that the percentage of daily value statement misled them, but is otherwise denied. The court will enter a ruling on the other pending motions [139], [161], [179], and [197] via cm/ecf, in which any further dates shall be set.

ENTER:

Manish S. Shah
United States District Judge

Date: November 4, 2019